UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BOVIET SOLAR TECHNOLOGY CO., LTD.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 25-00160 |

# COMPLAINT

On behalf of Boviet Solar Technology Co., Ltd., ("Boviet" or "Plaintiff"), we hereby bring this civil action and allege the following:

## Parties

1. Plaintiff is a Vietnamese producer and exporter of Crystalline Silicon Photovoltaic Cells ("Solar Cells") subject to the countervailing Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the Socialist Republic of Vietnam.

2. Defendant is the United States of America acting by and through the U.S. Department of Commerce (the "Department").

## Jurisdiction

3. This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i) to contest the final determination by the Department under 19 U.S.C. §1671d, in the countervailing duty investigation of Solar Cells from Vietnam.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Malaysia and Thailand: Amended Final Countervailing Duty Determinations; Crystalline Silicon Photovoltaic Cells, Whether or Not*

*Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Countervailing Duty Orders*, 90 Fed. Reg. 26,791 (Jun. 24, 2025) (Order); *see also Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination, in Part of Vietnam*, 90 Fed. Reg. 17,399 (Apr. 25, 2025) ("Final Determination").

4. Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## Standing

5. Plaintiff is a foreign exporter of the solar cells from Vietnam. Accordingly, plaintiff qualifies as an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).

6. In addition, because the Department made a Final Determination that was not lawful, or, otherwise overstated Plaintiff's countervailing duty margin, Plaintiff has been adversely affected or aggrieved by agency action within the meaning of Section 702 of Title 5 of the United States Code. Therefore, Plaintiff has standing to bring this action under 28 U.S.C. § 2631(c).

## Timeliness

7. Notice of the countervailing duty order was published in the *Federal Register* on June 24, 2025. Plaintiff filed a summons instituting this action on July 24, 2025, within thirty days after publication of the aforementioned countervailing duty order, serving notice of the action upon all other participants in the investigation on the same date. Furthermore, Plaintiff is filing this complaint on the next business day within thirty days after filing the aforementioned

summons.  Therefore, Plaintiff has commenced this action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 and Rule 6 of the Rules of this Court.

## Facts

8. On May 14, 2024, the Department initiated a countervailing duty investigation on Solar Cells from Vietnam.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Initiation of Countervailing Duty Investigations*, 89 Fed. Reg. 43,816 (May 20, 2024).

9. On June 18, 2024, the Department selected Boviet and JA Solar Vietnam Company Limited (JAVN) as mandatory respondents, *i.e.*, Vietnamese exporters whose individual data would be reviewed as a sample for all other cooperating exporters.  *See* Respondent Selection Memo (June 18, 2024).  The Department issued its initial questionnaire on July 3, 2024.

10. Boviet timely responded to all questionnaire responses.

11. In its Section III questionnaire response, Boviet responded to the Department's questions regarding the Import Duty Exemptions on Imported Raw Materials for Export Processing Enterprises and Export Processing Zones Program.  Boviet explained that as an EPE, Boviet is outside of the customs territory of Vietnam, and its imports of raw materials are not subject to import duty or import duty liability in the first place; therefore, there could not be any exemption for an import duty that Boviet has no obligation to pay in the first place.  *See* Boviet Sec III at 18.  The Government of Vietnam likewise explained the same premise and also explained the rigorous regulations and enforcement of the EPE system.  GOV IQR at Exhibit C-6.1.

12. The Department subsequently initiated upon three cross-border new subsidy

allegation ("NSA") programs on purchases of Chinese inputs.  On September 20, 2024, the Department initiated upon Cross-Border Provision of Chinese Silicon Wafers for LTAR.  On October 28, 2024, the Department initiated upon Cross-Border Provision of Chinese Silver Paste for LTAR and Cross-Border Provision of Chinese Solar Glass for LTAR.

       13.     For decades, Commerce's regulations recognized that the Tariff Act precludes it from addressing "transnational subsidies," *i.e.*, subsidies from governments outside the country under investigation.  *See* 19 C.F.R. § 351.527 (2023); 63 Fed. Reg. 65,348, 65,417 (Nov. 25, 1998).  However, in 2024, Commerce rescinded this longstanding rule and concluded, for the first time, that it *can* countervail transnational subsidies.  *See* 89 Fed. Reg. 20,766, 20,826–27 (Mar. 25, 2024).  This investigation is among the first instances of the Department initiating upon an alleged transnational subsidy.

       14.     Boviet, JAVN, and petitioner timely submitted benchmark information to measure the adequacy for remuneration for certain alleged countervailable programs.  Among this information, Boviet submitted Bloomberg data to benchmark solar silicon wafers.  Boviet Wafer NSA (October 11, 2024) at Exhibit NSAW-1; Boviet Benchmark Qre (December 5, 2024) at Exhibit NSAW2-3.  JAVN submitted PVInsights data to benchmark solar glass.  JAVN NSA (November 12, 2024) at Exhibit NSA2-16.  Both of these sources had been relied upon for many years in benchmarking the same inputs for LTAR programs in the Solar Cells from China Order.  Petitioner submitted very broad basket category export data from UN Comtrade to benchmark each of these programs.  Pet. Benchmarks (October 23, 2024) at Exhibit 1; at Pet. Benchmarks (November 22, 2024) at Exhibit NFI-1.

       15.     On October 4, 2024, the Department published its affirmative preliminary determination and calculated a 0.81 percent subsidy rate for Boviet.  *See Crystalline Silicon*

4

*Photovoltaic Cells, Whether or Not Assembled Into Modules, From the Socialist Republic of Vietnam: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 80,866 (October 4, 2024).  The Department stated that it intended to analyze the cross-border NSA programs in a post-preliminary memorandum.

16. In November and December 2025, the Department conducted in-person verifications of GOV, Boviet, and JAVN.  The Department included the initiated upon cross-border NSA programs in its verification.

17. On March 13, 2025, the Department issued a Post-Preliminary Determination finding that Boviet benefitted from the three cross-border programs initiated upon.  *See* Department's Post-Prelim Memo (March 13, 2025).  For wafers, the Department declined to rely upon Bloomberg, instead relying upon a basket category HTS 3818 and calculated a benefit of 155.61%.  For glass, the Department relied upon PVInsights and calculated a benefit of 0.96%.  And for silver paste, the Department calculated a benefit of 0.00%.

18. Boviet timely filed a case brief, arguing that the Department must make several adjustments to its Preliminary Determination.  Boviet Case Brief (March 24, 2025).  Boviet argued that the Department's decision to countervail alleged subsidies from China in this investigation is inconsistent with the Tariff Act, arbitrary and capricious, and contrary to law.  Boviet demonstrated from numerous provisions of the statute that transnational subsidies are not countervailable.  Among other things, Boviet noted that the text of Section 701 of the Tariff Act provides that countervailing duties may be imposed where the Department "determines that *the* government of *a* country or any public entity within the territory of *a* country is providing … a

countervailable subsidy," not governments of third countries, 19 U.S.C. § 1671(a)(1) (emphasis added); neighboring statutory provisions are rendered superfluous if transnational subsidies are countervailable, *see id.* §§ 1671(d), 1677-1(a); and various other Tariff Act provisions are incongruous with the notion of transnational subsidies—including the definition of "interested party" (*id.* § 1677(9)) and their rights and obligations, the meaning and application of the "specific" subsidy requirement (*id.* § 1677(5)(A)), the requirement that a "benefit" be "conferred" by the government's assistance (*id.* § 1677(5)(B)), the nonmarket economy country rules (*id.* § 1671(f)(1)), the rules for "Subsidies Agreement" countries (*id.* § 1671(a)(2), (c)), and third-country dumping rules (*id.* §§ 1677k; 1677(7)(F)(iii)(I)). Were there any doubt, the major-questions doctrine confirms that transnational subsidies are not countervailable, as does the statutory history behind the definition of "subsidy."

19.     Further, the Department's rescission of its regulation prohibiting transnational subsidies was arbitrary and capricious and contrary to law. The Department based its determination on a misunderstanding of the statutory history, and it justified its decision on perceived policy justifications rather than statutory text.

20.     Boviet also argued that the Department's reliance on non-specific UN Comtrade export data to benchmark solar silicon wafer instead of Bloomberg was unsupported by the record and contrary to over a decade of practice and Court decisions. In addition, the Department's inclusion of VAT and import duties on the benchmark is unsupported given Boviet is an EPE and did not pay VAT or import duties. Parties also argued that the record established that Respondents purchased silicon wafer from non-GOC authorities, such that they cannot confer a benefit.

21.     Boviet further argued that the Department incorrectly found that there was a

countervailable benefit for EPEs receiving an exemption on import duties for imported raw materials, as no such program exists in the first place, and nonetheless that no benefit exists according to 19 C.F.R 351.519 because the government has a reasonable, effective system to confirm which inputs are consumed in the production of the exported products.

22. Petitioner submitted a case brief arguing that the Department should rely upon UN Comtrade export data to benchmark solar glass. Boviet submitted a rebuttal brief, arguing the Department had properly relied upon PVInsights which is specific to solar glass and had been relied upon for numerous reviews.

23. On April 25, 2025, the Department published its Final Determination. The Department calculated a final subsidy rate for Boviet of 230.66%. The Department continued to rely upon UN Comtrade export data to benchmark silicon wafer, making further adjustments to the dataset, calculating a final benefit of 187.62%. The Department determined to rely upon UN Comtrade export data to benchmark solar glass, calculating a final benefit of 36.70%.

24. Despite the Department verifying at GOV, Boviet, and JAVN that EPEs are not part of the customs territory of Vietnam such that no program could exist and verifying the GOV's rigorous implementation of their EPE program, the Department continued to find that the Import Duty Exemptions on Imported Raw Materials for Export Processing Enterprises and Export Processing Zones conferred a benefit. Further, the Department determined to apply AFA to this program because Boviet had not reported that absent being an EPE, its purchases of aluminum frame would be subject to antidumping duties in Vietnam.

25. This appeal ensued.

## Count I

26. Plaintiff hereby incorporates, by reference, paragraphs 1 through 25 above.

27. The Department's decision to countervail alleged subsidies from China in this investigation against Vietnam is inconsistent with the Tariff Act, arbitrary and capricious, and contrary to law. 19 U.S.C. § 1516a(b)(1)(B)(i) (the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . ..") & (ii) (the court "shall hold unlawful any determination, finding, or conclusion found . . . to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). The statute clearly limits the CVD investigation to subsidies bestowed by a single country, not multiple or third countries, and the statutory scheme otherwise does not permit a cross-border subsidy finding.

## Count II

28. Plaintiff hereby incorporates, by reference, paragraphs 1 through 27 above.

29. The Department's withdrawal of the transnational subsidy regulation was arbitrary and capricious and contrary to law. 19 U.S.C. § 1516a(b)(1)(B)(ii). The Department's determination misunderstood the statutory history and was based on policy rationales rather than the traditional tools of statutory interpretation.

## Count III

30. Plaintiff hereby incorporates, by reference, paragraphs 1 through 29 above.

31. The Department's determination to countervail Boviet's purchases of silicon wafers was not supported by substantial evidence and was otherwise not in accordance with law because the record demonstrates that Boviet purchased its silicon wafers from non-GOC authorities.

## Count IV

32. Plaintiff hereby incorporates, by reference, paragraphs 1 through 31 above.

33. The Department's selection of the silicon wafer benchmark was unsupported by substantial evidence and otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). The Department relied upon an overly broad, non-specific benchmark source that was not indicative of prevailing market prices for silicon wafer, instead of relying upon Bloomberg, which provided solar specific silicon wafer pricing. Further, the decision was arbitrary and capricious given the Department's longstanding practice of relying upon Bloomberg. 19 U.S.C. § 1516a(b)(1)(B)(ii).

## Count V

34. Plaintiff hereby incorporates, by reference, paragraphs 1 through 33 above.

35. The Department's selection of the solar glass benchmark was unsupported by substantial evidence and not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). The Department relied upon an overly broad, non-specific benchmark source that was not indicative of prevailing market prices for solar glass, instead of relying upon PVInsights, which provided solar specific glass pricing. Further, the decision was arbitrary and capricious given the Department's longstanding practice of relying upon PVInights. 19 U.S.C. § 1516a(b)(1)(B)(ii).

## Count VI

36. Plaintiff hereby incorporates, by reference, paragraphs 1 through 35 above.

37. The Department's determination to add VAT and import duties to its benchmark prices for silicon wafers, silver paste, and solar glass was unsupported by substantial evidence and not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). The record demonstrated that Boviet would not have paid the VAT and import duties as an EPE.

**Count VII**

38. Plaintiff hereby incorporates, by reference, paragraphs 1 through 37 above.

39. The Department's finding of use of Import Duty Exemptions on Imported Raw Materials for Export Processing Enterprises program and the application of AFA to the program is unsupported by substantial evidence and is not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). Boviet demonstrated that there is no such program for any Export Processing Enterprise ("EPE"). Further, even if such a program exists, the government's reasonable and rigorous verification system of EPE's imports and exports meets all of the requirements of 19 CFR 351.519(a)(4)(i), such that no benefit exists. Lastly, the application of AFA to this program is also unlawful because Boviet acted to the best of its ability and provided all information requested to assess this program.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against the defendant:

(1) Declaring the Department's decision to countervail alleged subsidies from China in this investigation against Vietnam is inconsistent with the Tariff Act, arbitrary and capricious, and contrary to law;

(2) Declaring the Department's withdrawal of the transnational subsidy regulation was arbitrary and capricious and contrary to law;

(3) Declaring that the Department's selection of the silicon wafer benchmark is not supported by substantial evidence, is not in accordance with the law, and is arbitrary and capricious;

(4) Declaring that the Department's selection of the glass benchmark is not supported

by substantial evidence, is not in accordance with the law, and is arbitrary and capricious;

(5) Declaring the Department's inclusion of VAT and import duties in the benchmark calculation for an EPE is not supported by substantial evidence;

(6) Declaring the Department's finding of use of Import Duty Exemptions on Imported Raw Materials for Export Processing Enterprises program and the application of AFA to the program is unsupported by substantial evidence and is not in accordance with the law; and

(7) Granting Plaintiff such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang[**]
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth St., N.W.
Washington, DC 20005
Tel: (202) 868-0300
email: gmenegaz@igtlaw.com

/s/ David M. Morrell
David M. Morrell
Shelbie M. Rose
**Jones Day**
51 Louisiana Ave. NW
Washington, DC 20001
Tel: (202) 879-3636

Dated: August 25, 2025

---

[**] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).